UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TIMOTHY GILMORE                                                                                      PLAINTIFF

VS.                                                             CIVIL ACTION NO.: 3:10-CV-00267-DPJ-FKB

MICHAEL FARTHEREE,
in His Individual and Official
Capacity, and the CITY OF HAZLEHURST,
MISSISSIPPI                                                                                        DEFENDANTS

ORDER

This § 1983 and state law action is before the Court on Defendants' Motion for Summary Judgment. [54]. Having fully considered the issues and the parties' submissions in light of the applicable standards, the Court finds that Defendants' Motion for Summary Judgment is granted in part and denied in part.

I.    FACTS AND PROCEDURAL HISTORY

On September 26, 2009, Officer Michael Fartheree of the Hazlehurst, Mississippi, Police Department responded to a domestic-disturbance call at Plaintiff Timothy Gilmore's residence. Although the parties dispute the underlying facts, they agree that Officer Fartheree handcuffed Gilmore and placed him in a patrol car before eventually releasing Gilmore without charges.

Gilmore contends that Officer Fartheree lacked probable cause for an arrest, and he therefore sued Officer Fartheree and the City of Hazlehurst for violating the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the Mississippi Constitution. Gilmore also asserts a claim of negligence. Defendants now seek summary judgment on all claims. Federal question jurisdiction exists under 28 U.S.C. § 1331, and the

Court exercises supplemental jurisdiction over Gilmore's state-law claims under 28 U.S.C. § 1367.

II.     STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine

issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075 (5th Cir. 1994) (en banc).

III.   ANALYSIS

Gilmore claims that Officer Fartheree violated his federal rights in three ways: (1) detaining him without probable cause or reasonable suspicion; (2) conducting a warrantless search of his car; and (3) using excessive force. Defendants contend that (1) no constitutional violations occurred; (2) Officer Fartheree is otherwise entitled to qualified immunity; and (3) the City cannot be held vicariously liable. This Order addresses the federal claims against Officer Fartheree under the qualified immunity analysis before turning to the claims against the City, and it concludes with discussion of the state-law claims.

A.   Claims Against Officer Fartheree

"Qualified immunity protects government officials performing discretionary functions from civil damages liability if their actions were objectively reasonable in the light of then clearly established law." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001). When a defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To determine if an individual is entitled to qualified immunity, the Court applies a two-step analysis. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194,

201 (2001)).  "If not, our analysis ends."  *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).  The second prong requires the Court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.  To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Id.* at 411.  This Order examines each claim in light of this standard.

        1.      Whether Grounds Existed to Detain Gilmore

Officer Fartheree premises his motion on the argument that he never arrested Gilmore and merely detained him for investigatory purposes as allowed by *Terry v. Ohio*, 392 U.S. 1, 22, (1968).  Under *Terry*, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."  *Id.* at 22.  When a police officer detains an individual for investigative purposes without a warrant, the government bears the burden of proving reasonable suspicion.  *United States v. Gomez*, 623 F.3d 265 (5th Cir. 2010); *United States v. Martinez*, 486 F.3d 855, 859-60 (5th Cir. 2007).  "Reasonable suspicion requires less information and certainty than the probable cause needed to make an arrest."  *Id.*  (citing *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000)).  Reasonable suspicion is measured by what the officers knew before they conducted the search.  *Florida v. J.L.*, 529 U.S. 266, 267 (2000).

Gilmore counters that he was arrested and that the probable cause standard applies.  But he alternatively argues that if the detention was not an arrest, then Officer Fartheree engaged in a "knock and talk" which—like a *Terry* stop—requires reasonable suspicion.  Pl.'s Mem. [58] at 17.  Thus, as he did in his Complaint, Gilmore pursues alternative theories that no probable

cause or reasonable suspicion existed. *See*, *e.g.*, Pl.'s Compl. [1] ¶ 21. Framed in this way by the parties, the Court finds that questions of fact preclude summary judgment under either theory.

Beginning with reasonable suspicion, Officer Fartheree offers several justifications for the detention. For starters, he claims that Jerica Bouie, the mother of Gilmore's child, called 911 to report a domestic disturbance and that this call "alone establishes that reasonable suspicion existed" to detain Gilmore. Defs.' Mem. [55] at 7. But this argument assumes Officer Fartheree knew Bouie was the caller and alleged victim. He did not. Fartheree Dep. at 32. The record demonstrates instead that the 911 call was anonymous. And Officer Fartheree testified that when he received the dispatch, he did not know who called it in, the identity of the alleged victim, or what happened. *Id.* at 32. In fact, the alleged victim did not appear at the scene until after he had already handcuffed Gilmore. *Id.* at 34, 46.

The mere fact that Officer Fartheree responded to a 911 call for a domestic disturbance is not alone sufficient to establish reasonable suspicion. "Whether a 911 call provides reasonable suspicion to justify a stop is determined on a case-by-case basis." *United States v. Gomez*, 623 F.3d 265, 269 (5th Cir. 2010) (citation omitted). The factors to be considered in deciding whether a 911 call provides a sufficient basis for a stop include:

> (1) the credibility and reliability of the information; (2) the specificity of the information contained in the tip or report; (3) the extent to which the information can be verified by officers in the field; and (4) whether the tip or report concerns active or recent activity or has gone stale (citation omitted). If a tip is provided by an anonymous informant, such that the informant's credibility and reliability cannot be determined, the Government must establish reasonable suspicion based upon the remaining factors.

5

*Id.* The facts, when viewed in a light most favorable to Gilmore, will not support a finding that the anonymous and fact-devoid 911 call provided reasonable suspicion. In any event, as discussed below, the 911 call was not the reason Officer Fartheree handcuffed Gilmore.

Officer Fartheree also suggests that the chaotic scene at Gilmore's residence necessitated restraint. He argues that Gilmore was belligerent and that there was a need to "try to manage" Gilmore, Bouie, Gilmore's sister, and his sister's friend who were all at the scene. Defs.' Mem. [55] at 3. He then argues that the detention was necessary to allow him to investigate the call. *Id.* at 9–10. But Officer Fartheree testified that he restrained Gilmore before Bouie and the other women arrived. Fartheree Dep. at 46.

Read in a light most favorable to Gilmore, neither the 911 call nor the need to investigate motivated or would require detention. And what did cause the detention is disputed. The parties initially agree that when Officer Fartheree arrived, Gilmore came out of the house and was not cooperative. By all accounts, Gilmore refused to provide identification and told Officer Fartheree to leave. But Gilmore eventually relented and went into the house to get his driver's license. To this point, Officer Fartheree did not know any facts surrounding the 911 call, saw no apparent victims, and perceived no basis for restraining Gilmore. *Id.* at 18–19, 52. From here, the stories diverge.

According to Officer Fartheree, when Gilmore returned with his driver's license his demeanor was different. During his deposition, counsel asked the officer several times why he decided to use the handcuffs on Gilmore. Although the details differed slightly,[1] each response

---

[1] *See id.* at 30 ("[H]e got very belligerent, combative. At that time, I put the handcuffs on Mr. Gilmore because of his attitude and the belligerence, and like I told him, for his safety and mine...."); 47 (explaining that "when he made the statement that I know how to take care of

6

cited Gilmore's belligerence and the need for safety. In general, Fartheree contended that Gilmore was upset, cursing, clenching his fists and pacing, and that he eventually stated "I know how to take care of you and I got something for you." *Id.* at 47. At that point Officer Fartheree applied the handcuffs. In other words, Officer Fartheree testified that Gilmore's conduct after he returned with the license necessitated a brief detention for the safety of both men.

The problem, from a summary judgment standpoint, is that Gilmore tells a very different story. According to him, he neither clenched his fists nor acted in a belligerent manner towards Officer Fartheree. Pl.'s. Resp. [57] Ex. 6 ¶¶ 4, 5, 10-11. Gilmore also denies cursing at Officer Fartheree at any point before he was placed in handcuffs. Pl.'s Resp. [57] Ex. 1, Gilmore Dep. at 27. Gilmore contends instead that after complying with the request to produce identification, he accused Officer Fartheree of holding a grudge against him due to a prior incident and threatened to call Byron Swilley, the Hazlehurst Chief of Police. *Id.* at 29:2-12. Gilmore contends that immediately after he made that statement, Officer Fartheree placed the handcuffs on him and told him he was going to jail—not that he was being restrained for safety. *Id.* at 29.

Although reasonable suspicion is a question of law, "the district court cannot draw conclusions of law from disputed facts at the summary judgment phase." *Goodson v. City of Corpus Christi,* 202 F.3d. 730, 739 (5th Cir. 2000) (citing *Johnston v. City of Houston*, 14 F.3d 1056, (5th Cir. 1994)). In this case, Gilmore denies committing the very acts upon which Officer Fartheree justifies the restraint, and the two tell differing stories about the comments that precipitated the detention. The facts must be viewed in a light most favorable to the nonmoving

---

you and I got something for you, that's when I placed the handcuffs on him"); 49 (testifying that Gilmore was "very upset" based on his "body language" like "clenched fists, and pacing"); 47, 49 (testifying that in addition to the clenched fists, "it was all the cursing that he was doing").

party—Gilmore. Thus, material factual disputes preclude a finding that reasonable suspicion existed and that the detention was therefore constitutional. *See Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (holding that objective reasonableness could not be determined as a matter of law "without settling on a coherent view of what happened in the first place"); *Johnston*, 14 F.3d at 1059 (affirming denial of summary judgment based on qualified immunity where plaintiff and officers offered "divergent versions" of what precipitated the stop).

Finally, these same factual disputes about Gilmore's actions preclude Defendants' alternative argument that probable cause existed if the stop is viewed as an arrest. Whether viewed as a *Terry* stop, a "knock and talk," or an arrest, disputed facts preclude a finding of constitutionality at the summary judgment stage.

Turning to the second prong of the qualified immunity analysis, Officer Fartheree would still prevail if his actions were objectively reasonable. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). But this too turns on disputed facts—Gilmore's actions that allegedly justified the detention. A similar circumstance occurred in *Goodson*, where the court examined whether a stop and frisk was objectively reasonable. 202 F.3d at 739. The Fifth Circuit reversed summary judgment and held as follows:

> The lower court erred when it focused too closely on the fact that reasonable suspicion is a question of law. This is obviously true, but even though the district court will determine at trial as a matter of law whether reasonable suspicion existed, the district court cannot draw conclusions of law from disputed facts at the summary judgment phase. This principle was set forth in *Johnston v. City of Houston* [citation omitted], which squarely controls this case. There, we rejected the defendant's claim to summary judgment on the qualified immunity issue because '[d]ivergent versions of what happened have been offered by Appellants and Johnston.' [citation omitted]. We held that, because a genuine dispute as to the material and operative facts of this case exists, . . . [s]ummary judgment is inappropriate unless plaintiff's version of the violation does not implicate clearly established law. [citation omitted].

*Id.* (holding, "we are unable to determine whether Gaines acted in an objectively reasonable manner without resolving these factual disputes"). Gilmore has alleged a violation of clearly established law—the Fourth Amendment. Whether Officer Fartheree's actions were objectively unreasonable must be decided in light of disputed facts. Therefore, summary judgment is not appropriate.

### 2. Whether Officer Fartheree Conducted A Warrantless Search

Gilmore claims Officer Fartheree conducted a warrantless search of his vehicle by shining a flashlight through the widow without probable cause. Shining a light to illuminate the interior of a vehicle does not violate the Fourth Amendment. In *Texas v. Brown*, the Court held that the act of shining a flashlight into a vehicle without probable cause "trenched upon no right secured . . . by the Fourth Amendment." 460 U.S. 730, 740 (1983). Regardless, the act was not objectively unreasonable in light of clearly established law. Defendants are entitled to summary judgment on the claim that Officer Fartheree conducted an unlawful search of Gilmore's vehicle in violation of the Fourth Amendment.

### 3. Whether Officer Fartheree Used Excessive Force

To establish a claim for use of excessive force under the Fourth Amendment, Gilmore must prove he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996)). The determination of "objective reasonableness" is a question of law. *Ramirez v. Knoulton*, 542 F.3d 124 (5th Cir. 2008) (citing *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)). But disputes of material fact will prevent a court from determining the

objective reasonableness of an officer's conduct, thereby precluding summary judgment. *Gutierrez v. City of San Antonio*, 139 F.3d 441 n.10 (5th Cir. 1998).

Gilmore maintains that Officer Fartheree used excessive force when he pushed him into a car, twisted his wrist, and applied the handcuffs. It is important to note that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal citation and punctuation omitted). In this case, the alleged shove is not of constitutional significance because it resulted in no injury. But the way Officer Fartheree applied the handcuffs allegedly injured Gilmore's wrists leading to surgery and nearly $15,000 in medical expenses. Accordingly, the Court focuses on this aspect of the claim and dismisses the other.

Because of the disputed material facts regarding the need for restraint in the first instance, the Court cannot say at the summary judgment stage that the force used was objectively reasonable under the totality of the circumstances. The motion is therefore denied as to the excessive force claim regarding the manner in which Officer Fartheree applied the handcuffs.

B.  Gilmore's Claim Against the City

Gilmore claims the City should be held responsible under § 1983 for the constitutional deprivations he asserts. "Municipal liability cannot be sustained under a theory of *respondeat superior*." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (internal citations and quotations omitted). Instead, local governmental entities are subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, to succeed on a § 1983 claim

against the City, Gilmore carries the burden of showing (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell,* 436 U.S. at 694).

Gilmore fails to directly respond to the City's motion and appears to have abandoned the claim. Although he baldly asserts in his introduction that Officer Fartheree acted "pursuant to an official policy of the municipality," Pl.'s Mem. [58] at 1, Gilmore never revisits the issue and never fulfills his obligation to identify a policymaker or official policy. *See Piotrowski*, 237 F.3d at 578. To the contrary, Gilmore testified in his deposition that he was aware of no policy or customs leading to the allegations in his Complaint. City Defs.' Mot. [54] Ex. 3, Gilmore Dep. at 182. And the only record evidence Gilmore cites regarding a City policy is offered to support his argument that Officer Fartheree violated City policy. *See* Pl.'s Mem. [58] at 9–10, 21. Thus, if Gilmore has not abandoned his claim against the City, he falls well short of his responsibility under Rule 56 to designate specific facts showing a genuine issue for trial as to each essential element. Therefore, the claim against City is dismissed.

  C. State-Law Claims

Gilmore presents two state-law claims in his Complaint. He first asserts that Defendants violated the due process clause of Article 3, § 23, Mississippi Constitution (1890). Compl. ¶¶ 48, 51. Second he avers common-law negligence. Compl. ¶ 52. Neither claim survives Defendants' motion due to the Mississippi Torts Claim Act ("MTCA"), Mississippi Code Annotated section 11-46-1, *et. seq.* (Supp. 1999).

As frequently noted by the Mississippi Supreme Court, "[t]he MTCA provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit.  Any claim filed against a governmental entity and its employees must be brought under this statutory scheme." *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234, 1236 (Miss. 1999) (citations omitted).

The Mississippi Supreme Court applied this rule to bar state-constitutional claims in *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001).  Similar to Gilmore, the plaintiffs in *Sutton* alleged that defendants "denied their state constitutional rights without due process of law when the City of Jackson, through the actions of [its officer], violated investigatory and training procedures." *Id.*  The trial court denied summary judgment, but the appellate court reversed and rendered holding that "[t]he caselaw is clear that the Mississippi Tort Claims Act is the only route by which the plaintiffs could file suit against the City of Jackson and Officer McClendon." *Id.* at 981.  Gilmore failed to address this aspect of Defendants' motion which is otherwise meritorious.

As for the claim that Defendants acted negligently, section 11-46-9(1)(c) preserves immunity for governmental entities and employees for claims

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

The parties dispute whether Gilmore was engaged in criminal conduct, but the question matters not.  As stated in *Chapman v. City of Quitman*, "in the absence of criminal activity on the part of the victim, the police protection exemption *still* applies unless the act or omission complained of

12

evinces a 'reckless disregard' of the safety and well being of others [citations omitted]." 954 So. 2d 468 (Miss. 2007) (emphasis original).

Negligence, as asserted in Count V of the Complaint, is not the same as "reckless disregard" in the context of section 11-46-9(1)(c). "[R]eckless disregard is more than ordinary negligence, but less than an intentional act." *City of Jackson v. Brister*, 838 So. 2d 274, 280 (Miss. 2003). While Count V of the Complaint is limited to simple negligence, Gilmore attempts to remedy this issue in his responsive memorandum by stating that "Officer Fartheree's actions were intentional and malicious." Pl.'s Mem. [58] at 25. But that argument is not pleaded in Count V.[2]

Even if sufficiently pleaded, the record does not support a finding that Officer Fartheree's application of handcuffs meets the heightened standard under section 11-46-9(1)(c). The issue of governmental immunity for purposes of the MTCA is a question of law. *City of Jackson v. Harris*, 44 So. 2d 927, 931 (Miss. 2010). "In the context of section 11-46-9(1)(c), 'reckless disregard' encompasses willful and wanton action." *Titus v. Williams*, 844 So. 2d 459, 468 (Miss. 2003) (citing *Turner v. City of Ruleville*, 735 So. 2d 226, 230 (Miss. 1999)). In *Maye v. Pearl River County*, 758 So. 2d 391, 394 (Miss. 1999), the Court stated that "['reckless disregard'] usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Id.*

Certainly, the use of handcuffs by a police officer in the line of duty is a common occurrence that includes some level of discomfort, and the mere use of handcuffs would not rise

---

[2]Gilmore makes a conclusory statement in Paragraph 25 of the Complaint that the actions or inactions of Officer Fartheree were deliberate, intentional, malicious, and taken in reckless disregard to the rights, safety, heath and well-being of Gilmore.

to the level of "reckless disregard" within the framework of section 11-46-9(1)(c).[3] During his deposition, Gilmore recounted how Officer Fartheree applied the handcuffs which he alleges caused him injury. Pl.'s Resp. [57] Ex. 1, Gilmore Dep. at 31, 32. Gilmore claims that Officer Fartheree "bent [his] wrist out of position", *id.* at 31, and "grabbed it in an awkward position" *id.* at 32. He also states that the handcuffs—which he wore for six to twenty minutes—were too tight.

However, even viewing these assertions in a light most favorable to Gilmore, the record facts do not establish that Officer Fartheree acted in a manner amounting to a willingness to cause harm to Gilmore. *Maye,* 758 So. 2d at 395. Mere negligence is not sufficient. *Maldonado v. Kelly*, 768 So. 2d 906, 909 (Miss. 2000) ("Police officers . . . are more likely to be exposed to dangerous situations and to liability, and therefore, public policy requires that they may not be liable for mere negligence.").

Based upon the record, Gilmore has failed to establish that Officer Fartheree applied the handcuffs in a manner that rises to the level of "reckless disregard." Defendants are entitled to immunity under section 11-46-9(1)(c), and summary judgment is granted as to the negligence claim in Count V.

IV.   Conclusion

The Court has considered all arguments raised in the parties' submissions. Those not expressly addressed would not change the rulings. And for the reasons stated, the Court finds

---

[3]This raises a different question from whether Officer Fartheree's use of handcuffs was "objectively reasonable" under the excessive-force analysis given the heightened standard for establishing "reckless disregard" as defined under Mississippi jurisprudence.

that Defendant City of Hazlehurst, Mississippi, is entitled to summary judgment and Defendant Fartheree is entitled to partial summary judgment.

The parties are instructed to contact the Court's Courtroom Deputy to set this matter for pretrial conference.

**SO ORDERED AND ADJUDGED** this the 2nd day of December, 2011.

                                            s/ *Daniel P. Jordan III*
                                            UNITED STATES DISTRICT JUDGE